IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                     :

THOMAS JONES

                                     :

     v.                         :   Civil Action No. DKC 15-0491

                                     :

WARDEN BOBBY P. SHEARIN, et al.

                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights case is a motion to dismiss or, in the alternative, for summary judgment filed by Defendants Bobby P. Shearin, Frank B. Bishop, Jr., and Paul Pennington (collectively, the "Defendants"). (ECF No. 25).[1] The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Defendants' motion to dismiss will be granted.

I. **Background**

   A. **Factual Background**

Unless otherwise noted, the facts outlined here are construed in the light most favorable to Plaintiff Thomas Jones

---

[1] Plaintiff also named "Officer Connors" as a defendant in this action, but she has not been served. According to Plaintiff, "[s]ervice of the complaint as to Correctional Officer A. Conner was not accepted." (ECF No. 28-1, at 2 n.1). For ease of reference, this memorandum opinion will refer to "Officer Connors." Plaintiff will be directed to show cause why the complaint should not be dismissed as to her due to failure to effect service.

("Plaintiff"), the nonmoving party.   Plaintiff was incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.   Specifically, Plaintiff was housed in the D-wing housing unit #2.   Plaintiff alleges that in early February 2012, Defendants collectively decided to move Plaintiff to the B-wing housing unit #2.   (ECF No. 1 ¶ 9).   Plaintiff packed his belongings and met Correctional Officer Connors in the B-Wing.   According to Plaintiff, Officer Connors "ordered him to move into cell #19 on the top bunk."   (*Id.* ¶ 11). Plaintiff requested the bottom bunk, explaining to Officer Connors that "being placed on the top bunk[] would place him in danger due to his serious medical condition.   Plaintiff simply ask[ed] permission to take the bottom bunk to avoid being injured if he became ill from a seizure."   (*Id.* ¶ 12). Plaintiff also showed Officer Connors his I.D. card, which "clearly indicated 'seizure patient.'   This I.D. card was produced and provided by [the Division of Correction]. [Officer] Connors examined the I.D. card but ignored Plaintiff's reasonable requests, and again ordered him to take the top bunk."   (*Id.* ¶ 13).   If Plaintiff did not comply, she advised, he would be subject to "disciplinary adjustment."   (*Id.* ¶ 14). Plaintiff took the top bunk.

On February 22, 2012, Plaintiff experienced a seizure while sleeping and fell from the top bunk to the floor.   He sustained

"several fractured bones in the areas of his hip and face."
(*Id.* ¶ 16).  Plaintiff underwent three surgeries and may require
further treatment.  He alleges that, due to his fall, he has
"suffered severe physical pain, disfigurement, and emotional
pain."  (*Id.* ¶ 18).  At the time of Plaintiff's injury,
Defendant Shearin was the Warden of NBCI.  Defendant Bishop
served as the Chief of Security, and Defendant Pennington was
the Manager of housing unit #2.  According to Plaintiff,
Defendants were aware that he suffered from seizures, especially
while asleep.  (*Id.* ¶ 22).

### B.  Procedural Background

Plaintiff, represented by counsel, filed the complaint
against Defendants and Officer Connors on February 20, 2015.
(ECF No. 1).  Plaintiff asserts one claim under 42 U.S.C. § 1983
that Defendants violated his rights secured by the Eighth
Amendment to the United States Constitution.  According to
Plaintiff, "despite having full knowledge of [his] illness
and/or disease, Defendants were deliberately indifferent and
disregarded the potential danger by failing to take reasonable
measures and not providing a cell that would allow Plaintiff to
sleep on a bottom bunk."  (*Id.* ¶ 23).  He seeks $200,000.00 in
compensatory and punitive damages.  Defendants moved to dismiss
or, in the alternative, for summary judgment on February 19,

2016. (ECF No. 25). Plaintiff responded in opposition. (ECF No. 28).

## II.  Standard of Review

As noted, Defendants styled their motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment under Fed.R.Civ.P. 56. Defendants have attached inmate health records, an Administrative Remedy Procedure ("ARP") index report, and daily events logs from February 22, 2012, and the two days thereafter. (*See* ECF No. 25-2). Responding in opposition, Plaintiff also attached extraneous materials, including additional inmate health records, Plaintiff's ARP request and appeal to the Inmate Grievance Office ("IGO"), and a record of a disciplinary hearing at which Plaintiff was cleared of the charged violations. (*See* ECF No. 28-2).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109

4

F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). Plaintiff received notice of potential consideration under the summary judgment standard by virtue of the motion filed by Defendants. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998); *Warner v. Quilo*, No. ELH-12-248, 2012 WL 3065358, at *2 (D.Md. July 26, 2012) ("When the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur[.]"). Here, however, because the claims against the moving Defendants will be dismissed under Rule 12(b)(6), it is generally not necessary to evaluate the summary judgment motion. Defendants' exhaustion argument will be discussed below. *See infra* Part IV.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader

is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations without any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

## III. Plaintiff's § 1983 Claim Against the Moving Defendants

Defendants argue that Plaintiff's § 1983 claim is subject to dismissal for failure to demonstrate a violation of the

6

Eighth Amendment, lack of supervisory liability, sovereign immunity under the Eleventh Amendment, and qualified immunity.

### A. Deliberate Indifference to a Serious Medical Need

Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To proceed under § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated; and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiff asserts that Defendants violated his rights under the Eighth Amendment, "which imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates." (ECF No. 1 ¶ 25).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal

judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). To state an Eighth Amendment claim, Plaintiff must demonstrate that a defendant's action or failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff person was aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Id.* at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Here, assuming that Plaintiff's history of seizures qualifies as an objectively serious medical need, there simply are no allegations to support that the moving Defendants exhibited deliberate indifference in violation of the Eighth Amendment. Plaintiff contends that these Defendants, aware of his medical history, decided to move Plaintiff from the D-wing to the B-wing. (ECF No. 1 ¶¶ 9, 22-23). He fails even to allege, however, that any of the moving Defendants possessed subjective knowledge of his placement on the top bunk and the accompanying risk to his health. *See Felix-Torres v. Graham*, 687 F.Supp.2d 38, 53 (N.D.N.Y. 2009) ("Negligently failing to cause a prisoner to be assigned to a lower bunk does not satisfy the subjective element of the legal standard governing claims of deliberate indifference to a serious medical need under the Eighth Amendment." (citations omitted)). Plaintiff named Officer Connors as a defendant and sufficiently alleged subjective knowledge on her part (*see* ECF No. 1 ¶¶ 11-16); to date, however, Officer Connors has not been served. Accordingly, because the moving Defendants cannot be shown to have had requisite subjective knowledge, Plaintiff's Eighth Amendment claim against them cannot withstand Rule 12(b)(6) review.[2]

---

[2] Plaintiff argues that "Officer [Connors] did 'know' of a substantial risk of serious harm. She did not just simply have

**B. Supervisory Liability**

Plaintiff asserts that Defendants are subject to supervisory liability under § 1983. (ECF No. 28-1, at 6-7). The law in the United States Court of Appeals for the Fourth Circuit is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with factual allegations that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to

[Plaintiff's] representations as to his medical condition. Officer [Connors] examined [Plaintiff's] I.D. card which clearly indicated 'seizure patient.'" (ECF No. 28-1, at 9). Plaintiff offers no further argument regarding *the moving Defendants'* deliberate indifference to his medical needs, instead asserting that they are liable in their supervisory capacities.

show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "Generally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983); *see Jones v. Murphy*, 470 F.Supp.2d 537, 546 (D.Md. 2007).

Here, Plaintiff's § 1983 supervisory liability claim against Defendants fails at step one: he does not allege facts showing that any Defendant had knowledge – actual or constructive – that subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff or others. Critically, Plaintiff fails even to allege that Defendants were aware of Officer Connors' purported denial of Plaintiff's request to use the bottom bunk. As Defendants argue, "the only person that Plaintiff specifically made aware [of the accompanying medical risks], and the only person that chose to ignore Plaintiff's condition, was [Officer] Connors." (ECF No. 25-1, at 12). Defendants cannot "reasonably be expected to guard against the deliberate . . . acts of [their] properly trained employees when [they] has no basis upon which to anticipate the misconduct." *Slakan*, 737 F.2d at 373.

Although Plaintiff alleges that Defendants were aware that he suffered from seizures and decided to move him from D-wing to B-wing, Defendants do not appear to have been personally involved in the decision to place Plaintiff on the top bunk.[3] Accordingly, Plaintiff has failed to allege any factual basis for imposing supervisory liability on Defendants.[4]

---

[3] In his opposition papers, Plaintiff argues that "[Defendant] Shearin established and failed to implement policies, which resulted in not holding the staff accountable for actions; failure to communicate with inmates, creating an atmosphere of distrust; failure to follow orders; and failure to address serious staff misconduct." (ECF No. 28-1, at 7). "The doctrine of supervisory liability . . . renders supervisors liable under § 1983 for constitutional torts committed by employees in furtherance of official policies, including regulations, ordinances, decisions, and informal customs." *Delph v. Trent*, 86 F.Supp.2d 572, 575 (E.D.Va. 2000). Here, however, the complaint is devoid of allegations regarding any particular policies, procedures, or customs that led to Plaintiff's injury. Rather, he alleges only that "Defendants were deliberately indifferent and disregarded the potential danger by failing to take reasonable measures and not providing a cell that would allow Plaintiff to sleep on the bottom bunk." (ECF No. 1 ¶ 23). Furthermore, he describes only this one incident in which he was denied a bottom bunk and injured. *See Murphy*, 470 F.Supp.2d at 546 ("Constructive notice can be alleged in multiple ways, including the existence of written reports of conditions at a detention facility, or a supervisor's high level of responsibility coupled with the violations alleged to have occurred on her or his watch."). Plaintiff thus fails to establish the first element of a § 1983 supervisory liability claim.

[4] In light of the foregoing analysis, the court need not address the moving Defendants' Eleventh Amendment and qualified immunity arguments.

## IV.  Plaintiff's § 1983 Claim Against Officer Connors

As noted, Plaintiff has not served Officer Connors, and the time for doing so has long since expired.  Plaintiff will be directed to show cause why the complaint should not be dismissed as to her.  Furthermore, while the arguments found meritorious as to Defendants Shearin, Bishop, and Pennington would not apply directly to Officer Connors, their summary judgment argument regarding exhaustion of administrative remedies might, and it will be addressed.

The moving Defendants contend that Plaintiff's claim is barred for failure to exhaust administrative remedies, as they assert that he did not properly pursue his claim to all levels of administrative review.  (*See* ECF No. 25-1, at 16-18).  The Prisoner Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  Administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, failure to exhaust is an affirmative defense to be pleaded and proven by the defendant.  *See Jones v. Bock*, 549 U.S. 199, 215–

13

216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 683 (4th Cir. 2005) (determining that the PLRA does not obligate inmates challenging prison conditions to plead exhaustion in the complaint).

In Maryland, filing a request for administrative remedy with the warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction. The request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. If the request is denied, the prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. And if that appeal is denied, the prisoner has 30 days to file an appeal to the Executive Director of the IGO. *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.01 *et seq*. Administrative remedies must be available to inmates, and the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aguilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented

14

> from availing himself of it. *See Aquilar-*
> *Avellaveda*[, 478 F.3d at 1225]; *Kaba v.*
> *Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).
> Conversely, a prisoner does not exhaust all
> available remedies simply by failing to
> follow the required steps so that remedies
> that once were available to him no longer
> are. *See Woodford*[, 548 U.S. at 90].
> Rather, to be entitled to bring suit in
> federal court, a prisoner must have utilized
> all available remedies "in accordance with
> the applicable procedural rules," so that
> prison officials have been given an
> opportunity to address the claims
> administratively. *Id.* at 88. Having done
> that, a prisoner has exhausted his available
> remedies, even if prison employees do not
> respond. *See Dole v. Chandler*, 438 F.3d
> 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see Ross v.*

*Blake*, 136 S.Ct. 1850, 1858 (2016).

Here, Plaintiff's failure to exhaust administrative

remedies is not apparent from the complaint, and the parties

have submitted extraneous materials regarding exhaustion.

Plaintiff apparently filed a request for administrative remedy

on March 22, 2012. (*See* ECF No. 28-2, at 5-6). He recounted

many factual allegations later included in the complaint, and he

concluded:

> [Officer Connors] clearly violated my
> Eighth Amendment [rights] by applying
> deliberate indifference and exposing me to a
> dangerous condition, even after she was
> aware that I was a [seizure] patient and was
> not suppose[d] to be on a top bunk . . . .
> I hold [Defendants Shearin, Bishop and
> Pennington] liable as well as [Officer

> Connors] for [Officer Connors'] deliberate
> indifference.

(*Id.* at 6).   The moving Defendants attached an ARP index report purporting to show that Plaintiff did not submit an ARP request to resolve his claim.   Indeed, the index report reveals that he filed no cases between January 4, 2012, and December 22, 2012. (ECF No. 25-2, at 2).   Plaintiff contends that his failure to exhaust administrative remedies should be excused because such remedies were made unavailable to him.   According to Plaintiff, he "filed an ARP [request] on March 22, 2012[,] signed by [Correctional Officer] M.J. Brown [].   However, [Defendant] Shearin failed to respond to the complaint within the time frame required by the procedure.   Plaintiff [] filed an appeal to the [IGO] on June 15, 2012."   (ECF No. 28-1, at 3 (citing ECF No. 28-2, at 5-7)).   In his appeal to the IGO, Plaintiff explained:

> The facts are as follows:  1. I appealed my
> unindexed complaint to the Commissioner on
> April 22, 2012.  2.  My complaint to the
> Warden was essentially that due to
> negligence and a failure of staff to adhere
> to medical policy and due to deliberate
> indifference by staff of my medical
> condition, I was forced to get on a top
> bunk, under threat of disciplinary action.
> I subsequently had a seizure and fall off of
> the bunk while asleep, substantially
> injuring myself.  3.  The Commissioner has
> failed to respond to the appeal within 30
> days including 3 days of service by mail.
> His response was due May 25, 2012.  Today's
> date is June 15, 2012.  Therefore I appeal
> this complaint to [the IGO] . . . .

16

(ECF No. 28-2, at 7).  Plaintiff also asserts that some of his paperwork was "damaged or destroyed by prison officials" and that he was "subjected to retaliatory harassment due to his use of the prison grievance system."  (ECF No. 28-1, at 6; see ECF No. 28-2, at 8-10).

Plaintiff concedes that he has not properly exhausted administrative remedies.  On the present record, however, there is a genuine dispute regarding whether Plaintiff was prevented from seeking available administrative remedies.  Accordingly, the current record is insufficient to grant summary judgment to defendants on the failure to exhaust administrative remedies issue.

## V.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted.  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge